**IT IS ORDERED as set forth below:**

**Date: August 5, 2026**

_____

**Jeffery W. Cavender**
**U.S. Bankruptcy Court Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 25-60874-JWC |
| LANA CANDICE BROWN, | CHAPTER 7 |
| Debtor. | |
| YOMAND BROWN, | ADVERSARY PROCEEDING NO. |
| Plaintiff/Counterclaim Defendant, | 25-05261-JWC |
| v. | |
| LANA CANDICE BROWN, | |
| Defendant/Counterclaim Plaintiff. | |

## ORDER

1

Before the Court is the Motion to Dismiss Counterclaims (Doc. No. 5) (the "Motion") filed by plaintiff Yomand Brown ("Mr. Brown") pursuant to Federal Rule of Civil Procedure 12(b)(1).[1] Mr. Brown initiated this adversary proceeding by filing a Complaint to Determine Dischargeability of Debt (Doc. No. 1) (the "Complaint").[2] Mr. Brown claims a judgment for attorney's fees he obtained against Lana Candice Brown ("Debtor" or "Ms. Brown") is nondischargeable under 11 U.S.C. § 523(a)(5) and (15). Ms. Brown filed an Answer and Counterclaim seeking monetary damages based on arrears allegedly owed to her pursuant to a divorce decree, parenting plan, and several state court contempt orders (Doc. No. 4) (the "Counterclaims").

Mr. Brown filed the Motion arguing two grounds for dismissal of the Counterclaims: 1) they assert only state law claims arising purely from the Georgia Domestic Relations Code, therefore the domestic relations exception applies to relieve this Court of subject matter jurisdiction, and 2) Debtor is attempting to relitigate issues raised and decided by a state court, violating the *Rooker-Feldman* doctrine. Ms. Brown filed a response in opposition to the Motion contesting both points (Doc. No. 7) (the "Response"), and Mr. Brown filed a Reply in further support of his Motion (Doc. No. 8) (the "Reply").

After careful review of the Counterclaims, the Motion, the Response, and the

---

[1] All citations or references to a Federal Rule are to the Federal Rules of Civil Procedure. All citations or references to a Bankruptcy Rule are to the Federal Rules of Bankruptcy Procedure. All citations or references to a statute, including sections and chapters, are to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, unless otherwise specified.

[2] References to the docket in this adversary proceeding are cited to as "Doc. No." or their respective given title, and references to the docket in the underlying bankruptcy case are cited to as "BK Doc. No."

2

Reply, the Court will grant the Motion and dismiss the Counterclaims for the reasons that follow.

## I.      **<u>BACKGROUND</u>** [3]

This case relates to a divorce proceeding between Lana Brown and Yomand Brown. Mr. Brown filed for divorce on December 3, 2021 (*See* case no. 2021CV357579). After lengthy proceedings and hearings, the Superior Court of Fulton County, Family Division (the "State Court") entered a Final Judgment and Decree of Divorce on April 25, 2023. The State Court also entered a Parenting Plan Order addressing custody and parenting time for their shared child. Mr. Brown filed a Motion for Reconsideration, Motion to Set Aside, and Motion for New Trial, and after a hearing, the State Court entered a Final Judgment and Decree of Divorce (Second Amended) (the "Divorce Decree") on July 21, 2023 (Countercls. ¶ 3; Mot., p. 70–88). Also, as part of the divorce proceeding, the State Court entered an Order on Fees, ordering Mr. Brown and his counsel to pay $6,595 to Ms. Brown's divorce counsel, Clark Lowery & Lumpkin. [Mot., p. 67–69.] The Divorce Decree awarded both parties joint legal custody of their child, with Ms. Brown having primary physical custody. [*Id.* at 72.] The Divorce Decree required Mr. Brown to pay Ms.

---

[3] The Court takes judicial notice of the docket, orders, and pleadings filed in Ms. Brown's underlying bankruptcy case and this adversary proceeding. FED. R. EVID. 201; *Bobadialla v. Aurora Loan Servs.,* 478 F. App'x 625, 627 (11th Cir. 2012) (unpublished) ("A court may take judicial notice of its own records and the records of inferior courts.") (quoting *United States v. Rey*, 811 F.2d 1453, 1457 n.5 (11th Cir. 1987)). The Court also takes judicial notice of the orders in the Superior Court of Fulton County, Family Division proceedings. "[A] court may take judicial notice of another court's order only for the limited purpose of recognizing the 'judicial act' that the other order represents or the subject matter of the litigation." *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994); *see also Thomas v. Waste Pro USA, Inc.*, No. 8:17-cv-2254-T-36CPT, 2019 WL 3835255, at *2 (M.D. Fla. Aug. 15, 2019).

Brown child support of $1,318 per month. [*Id.* at 73.] It further required Mr. Brown to pay sixty-six percent of the following: (1) uncovered health care expenses including medical and dental, (2) extracurricular activity expenses including sports, lessons, camps, and tutoring, (3) educational expenses including private school tuition, books, and fees, and (4) the full cost of after-school expenses. [*Id.* at 74, 75, 78.] Mr. Brown is also fully responsible for debts owed to the IRS. [*Id.* at 83.] The Counterclaims state that the total outstanding IRS debt is $114,119.39, and the IRS is holding Ms. Brown responsible for $20,159.25, all of which Mr. Brown was ordered to pay. [Countercls. ¶ 12.]

After the Divorce Decree was entered, Ms. Brown filed three separate petitions for contempt with the State Court. The first petition was filed November 9, 2023, with an amended petition filed December 4, 2023 (*See* case no. 2023CV388582). On May 13, 2024, the State Court entered an order finding Mr. Brown in willful contempt and awarding Ms. Brown $5,000 in attorney's fees to be paid directly to her counsel, Fagan Law Group, LLC. [Mot., p. 62–66.]

Ms. Brown filed a second petition on September 10, 2024, which was granted on November 12, 2024. [*Id.* at 52–61; *see* case no. 24CV011434.] The State Court again found Mr. Brown in willful contempt and awarded Ms. Brown a sum of $12,663 in attorney's fees, comprised of $9,000 in attorney's fees for prosecution of the contempt petition and tax attorney's fees of $3,663, both to be paid directly to Ms. Brown's

4

counsel, Blooms Lines Alexander. [Mot., p. 52–61.] Ms. Brown asserts that the tax attorney bill is now $11,310.32 due to nonpayment. [Countercls. ¶ 11.]

Ms. Brown filed her third petition for contempt, the petition most relevant here, on April 23, 2025 (the "Third Contempt Petition"). [Mot., p. 11–45; *see* case no. 25CV005447.] In the Third Contempt Petition Ms. Brown alleged Mr. Brown continuously and repeatedly engaged in a pattern of willful non-compliance with the Divorce Decree and two prior contempt orders. The Third Contempt Petition's relevant counts include:

- Count 4: Failure to pay child support as ordered and requesting the court to order Mr. Brown to pay $1,034 for February 2025 child support arrears,
- Count 6: Failure to pay child's private school tuition and aftercare costs and failure to reimburse petitioner and requesting the court to order Mr. Brown to pay $2,184 for his share in tuition and aftercare expenses,
- Count 7: Failure to reimburse child's medical and extracurricular expenses and requesting the court to order Mr. Brown to pay $1,923.44 for his share in medical and extracurricular expenses,
- Count 8: Failure to reimburse petitioner's attorney's fees (Clark Lowery & Lumpkin) and requesting the court to order Mr. Brown to pay the full amount of $6,595,
- Count 9: Failure to reimburse petitioner's tax attorney's fees (Kess & Chitty Law) and requesting the court to order Mr. Brown to pay the full amount of $3,663,
- Count 10: Failure to pay awarded attorney's fees (Bloom Lines Alexander) and requesting the court order Mr. Brown to pay $5,000 of the court ordered $9,000,
- Count 11: Failure to pay awarded attorney's fees (Fagan Law Group) and requesting the court order Mr. Brown to pay $4,000 of the court ordered $5,000.

On July 29, 2025, the State Court entered a final order denying the Third Contempt Petition finding that Ms. Brown "failed to support her claims of contempt with competent evidence . . . ." [Mot., p. 110.] Through its denial, the State Court awarded

Mr. Brown's counsel's legal fees in the amount of $16,000 to be paid by Ms. Brown. [*Id.*]

Ms. Brown filed a petition for relief under chapter 7 of the Bankruptcy Code on September 19, 2025. Her schedule A/B filed with her petition reflects a property interest in past due attorney's fees listed above and past due support of $9,457.37 (BK Doc. No. 1, p. 14). Ms. Brown also asserts an exemption in the past due child support of $9,457.37 (*Id.* at 18). Her scheduled nonpriority unsecured creditors include the following relevant claims: 1) $14,500 owed to Bloom Lines Alexander LLC, 2) $2,925 owed to Fagan Law Group, and 3) $20,895 owed to the IRS (*Id.* at 21–22). The descriptions of these claims assert that these amounts are owed by Mr. Brown (*Id.*). The Chapter 7 Trustee ("Trustee") filed a report of no distribution certifying the estate was fully administered and that after diligent inquiry there is no property available for distribution from the estate above that exempted by law. On December 29, 2025, the Court entered an order granting Ms. Brown a discharge and closing the case (BK Doc. No. 17). Mr. Brown filed this adversary proceeding seeking a determination that the State Court's award of $16,000 in legal fees is nondischargeable in this bankruptcy case. Ms. Brown answered the Complaint and asserts Counterclaims seeking monetary damages based on arrears allegedly owed to her pursuant to the Divorce Decree, parenting plan, and the State Court contempt orders. Specifically, Ms. Brown seeks

- $1,450.01 in unpaid child support;
- $6,595.00 in previously ordered attorney's fees;
- $5,000.00 in additional attorney's fees;
- $9,000.00 in further attorney's fees and expenses;

- $4,702.71 in unpaid uncovered medical, dental, and vision expenses;
- $656.98 in aftercare/childcare and camp costs;
- $199.98 in child's extracurricular activities;
- $787.42 in child's belongings;
- $11,310.32 in tax attorney's fees; and
- $20,159.25 plus any IRS interest and fees to clear the outstanding IRS balance.

Mr. Brown's Motion seeks dismissal of the Counterclaims under *Rooker-Feldman* and the domestic relations exception, and Ms. Brown opposes their dismissal.

## II.   <u>STANDARD OF REVIEW</u>

Dismissal under Federal Rule 12(b)(1) is made applicable to adversary proceedings by Bankruptcy Rule 7012. "A court must accept the material factual allegations in the [pleadings] as true, but need not draw inferences favorable to the plaintiff." *Penthouse Media Grp. v. Guccione (In re Gen. Media, Inc.)*, 335 B.R. 66, 71–72 (Bankr. S.D.N.Y. 2005); *see also Maxwell v. HSBC Mortg. Corp. (In re Maxwell)*, No. 12-5284, 2012 WL 3678609, *1 (Bankr. N.D. Ga. Aug. 22, 2012); *Kennedy v. Miss. Dep't of Rev. (In re Kennedy)*, 529 B.R. 345, 348–49 (Bankr. N.D. Ga. 2015). "A motion to dismiss for lack of subject matter jurisdiction under [Federal Rule] 12(b)(1) takes one of two forms: a 'facial attack' or a 'factual attack.'" *Parsons v. Osborn*, No. 2:24-cv-75-GMB, 2024 WL 3205389, at *1 (N.D. Ala. June 27, 2024). A factual attack means the challenge to subject matter jurisdiction is "in fact, irrespective of the pleadings," and the Court can consider extrinsic evidence. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003); *see also Parsons*, 2024 WL 3205389, at *1. A court may consider "materials outside of the pleadings to resolve any jurisdictional disputes, but cannot rely on conclusory or hearsay evidence." *In re Gen. Media, Inc.*,

7

335 B.R. at 72; *see also In re Maxwell*, 2012 WL 3678609, at *1; *Bicoastal Corp. v. Semi-Tech Microelectronics Ltd. (In re Bicoastal Corp.)*, 130 B.R. 597, 598 (Bankr. M.D. Fla. 1991) ("It is now well established that if a Motion to Dismiss is a factual attack on the jurisdiction of the Court, the Court may consider competent evidence such as affidavits, deposition testimony and the like in order to determine the factual dispute."). Because Mr. Brown's Motion is a factual attack on this Court's jurisdiction over the Counterclaims, the Court can consider the evidence submitted with the Motion.

### III.      ANALYSIS

#### A. *Rooker-Feldman* Doctrine

The Court first considers whether the *Rooker-Feldman* doctrine bars the Court from hearing the Counterclaims. Mr. Brown argues that *Rooker-Feldman* applies because Ms. Brown is attempting to relitigate the Third Contempt Petition through her Counterclaims. The *Rooker-Feldman* doctrine derives from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983), which hold that a federal court cannot review a state court judgment. The doctrine is confined to cases "brought by state-court losers complaining of injuries caused by state-court judgments . . . inviting [federal] court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *see also T.M. v. Univ. of Md. Med. Sys. Corp.*, 146 S. Ct. 1739, 1748 (2026). The Eleventh Circuit applies *Rooker-Feldman* narrowly and only when claims are a direct attack on a state court decision. *See Giehl v. Ocwen Fin. Corp.*, No. 24-12726,

8

2026 WL 1195912, at *3 (11th Cir. May 1, 2026). One way to determine if an action is a direct attack is if issues before the federal court are "'inextricably intertwined' with the state court judgment so that (1) the success of the federal claim would 'effectively nullify' the state court judgment, or that (2) the federal claim would succeed 'only to the extent that the state court wrongly decided the issues.'" *Alvarez v. Att'y Gen. for Fla.*, 679 F.3d 1257, 1262–63 (11th Cir. 2012) (quoting *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009)); *see also Jackson v. Georgia*, No. 1:25-cv-01321-LMM, 2025 WL 1781316, at *1 (N.D. Ga. Mar. 24, 2025). "*Rooker-Feldman* [] does not prioritize form over substance. It bars all appeals of state court judgments—whether the plaintiff admits to filing a direct appeal of the judgment or tries to call the appeal something else." *Behr v. Campbell*, 8 F.4th 1206, 1211 (11th Cir. 2021).

Mr. Brown argues *Rooker-Feldman* applies because most of the amounts asserted in Ms. Brown's Third Contempt Petition match the amounts asserted in her Counterclaims. In contrast, Ms. Brown argues that she is not complaining of any injury caused by the state court judgment in the Third Contempt Petition, and she is not a "state-court loser" because she has previous orders awarding her money.[4] The

---

[4] Ms. Brown cites to *King v. King (In re King)*, 214 B.R. 69 (Bankr. D. Conn. 1997) to argue that a bankruptcy court may evaluate domestic support obligations without acting as an appeals court. However, in *King*, the debtor initiated an adversary proceeding against his ex-spouse to determine whether an obligation imposed on him from their divorce was dischargeable. The ex-spouse counterclaimed with another nondischargeability claim. The court found the matter was a core proceeding pursuant to 28 U.S.C. § 152(b)(2) because it only had to determine dischargeability under § 523. That is not the case here. Ms. Brown is not asserting a counterclaim based on dischargeability principles but is instead requesting this Court enforce obligations imposed on Mr. Brown which have previously been addressed in a number of orders by the State Court.

Court agrees with Mr. Brown and finds that *Rooker-Feldman* bars Ms. Brown's efforts to relitigate the same issues she raised and lost in her Third Contempt Petition. Her Response states that "[s]he is complaining of Plaintiff's failure to comply with those judgments," which is exactly what she tried to do in the Third Contempt Petition. [Resp., p. 6.] Her Counterclaims also state that "[c]ounter-Defendant has repeatedly and willfully failed to comply with multiple court orders . . . ." [Countercls. ¶ 4.] Although she claims that her Counterclaims do not invite rejection of the State Court's contempt judgment, most of the amounts requested in her Counterclaims match the exact amounts requested and denied in her Third Contempt Petition, including attorney's fees in the amounts of $6,595, $5,000, and $9,000.[5] [Countercls., Wherefore Clause; Mot., Contempt Petition, count 4, 6, 7, 8, 9, 10, 11.] No matter how Ms. Brown phrases her Counterclaims, she is asking this Court to re-award her attorney's fees the State Court previously awarded her but nonetheless refused to hold Mr. Brown in contempt for lack of evidence. Allowing the Counterclaims to proceed would effectively grant Ms. Brown a second bite at the apple. Ms. Brown's Counterclaims are "inextricably intertwined" with the State Court's denial of her Third Contempt Petition. The State Court refused to find Mr. Brown in contempt, and allowing Ms. Brown to relitigate the State Court's contempt denial through this proceeding violates the *Rooker-Feldman* doctrine. To the extent any parts of the

---

[5] The only amounts requested that were not raised in the Third Contempt Petition are her request for $787.42 in child's belongings and the outstanding IRS debt. She requested an order requiring Mr. Brown to pay the tax attorney's fees of $3,663, however she now asserts the balance is $11,310.32 due to Mr. Brown's nonpayment and noncompliance.

10

Counterclaims are not a direct attack on the State Court's denial of the Third Contempt Petition, and Ms. Brown has some independent new claims to which *Rooker-Feldman* does not apply,[6] the Court will nonetheless dismiss the Counterclaims for the reasons discussed below.

### B. **The Domestic Relations Exception**

Even if the *Rooker-Feldman* doctrine was inapplicable, the domestic relations exception provides an independent basis for this Court to decline hearing the Counterclaims. The domestic relations exception is a judicially created doctrine which divests federal courts of subject matter jurisdiction in "cases involving the issuance of a divorce, alimony, or child custody . . . ." *Ankenbrandt v. Richards*, 504 U.S. 689, 704 (1992). Through its inception, the Supreme Court found that state courts are generally better suited with judicial expertise in domestic relations to issue these types of decrees. *Id.* While the domestic relations exception may divest federal courts of jurisdiction in some circumstances, it should be narrowly interpreted to cover only a "narrow range of domestic relations issues . . . ." *Id.* at 701; *see also Marshall v. Marshall*, 547 U.S. 293, 307 (2006).[7] If the Court finds the domestic relations

---

[6] *See Bruce v. U.S. Bank Nat'l Ass'n*, No. 25-12152, 2026 WL 788893, at *5 (11th Cir. Mar. 20, 2026) (finding the *Rooker-Feldman* doctrine requires a claim-by-claim analysis).

[7] Courts agree that this exception applies to diversity jurisdiction cases but are split on whether it also applies to federal question cases. Although the Eleventh Circuit has yet to expressly take a stance, courts in the Eleventh Circuit have applied this exception in both diversity and federal question jurisdiction cases only when hearing the case would deeply involve the federal court in domestic matters. *See Plyatso v. Benton*, No. 25-11784, 2026 WL 1195900, at *4 (11th Cir. May 1, 2026); *Amelio v. Omlor*, No. 8:26-cv-184, 2026 WL 539133, at *3 (M.D. Fla. Feb. 26, 2026) (collecting district court cases that have applied the domestic relations exception to federal question cases when "hearing the dispute would 'deeply involve' the courts in 'adjudicating domestic matters.'").

exception applies, the Court lacks subject matter jurisdiction and cannot hear the Counterclaims.[8]

Mr. Brown argues that the Counterclaims arise purely from the Georgia Domestic Relations Code, and the Court lacks subject matter jurisdiction over the claims pursuant to the domestic relations exception. Mr. Brown urges a broad interpretation of the exception proposing that it applies to the "whole subject of the domestic relations of husband and wife" and to actions involving enforcement of divorce decrees. [Reply, p. 3.] In contrast Ms. Brown argues that this Court has core jurisdiction over the Counterclaims, and the domestic relations exception does not apply. She contends that the exception is narrow and divests federal courts of jurisdiction only from *issuing* divorce, alimony or child custody decrees. She further argues that she is not asking this Court to issue any such decree but rather determine the bankruptcy treatment of Mr. Brown's obligations. Ms. Brown, however, has not filed counterclaims based on dischargeability or otherwise sought a determination as to the "bankruptcy treatment" of the claims. Her Counterclaims assert that Mr.

---

[8] Although many courts conflate the domestic relations exception with abstention doctrines, they present separate questions. *See, e.g.*, *Cox v. Fretwell*, No. 3:20-cv-705, 2022 WL 370234, at *3 (M.D. Ala. Feb. 7, 2022) ("Some courts have construed the doctrine to be a type of prudential abstention rather than a divestment of jurisdiction."); *Rash v. Rash*, 173 F.3d 1376, 1380 (11th Cir. 1999) (finding that the domestic relations "exception is narrowly confined; it is not an absolute rule, but rather the question is whether the court in its discretion should abstain."). If the Court finds the domestic relation exception does not apply and there is subject matter jurisdiction, the Court can still consider whether abstention is appropriate. *See Deem v. Dimella-Deem*, 941 F.3d 618, 622 (2d Cir. 2019) ("[W]e first consider whether the domestic relations exception to federal jurisdiction applies — that is, whether the district court lacks subject matter jurisdiction as a threshold matter — and then, if the answer is no, we proceed to consider whether the district court properly abstained from exercising its jurisdiction."); *Scott v. Batchelor*, No. 3:25cv973, 2026 WL 2013981, at *4 (N.D. Fla. Mar. 12, 2026) ("The doctrine imposes two limits on federal courts' power: (1) courts may not issue divorce, alimony, and child custody decrees; and (2) even when subject matter jurisdiction might be proper, courts should abstain from exercising jurisdiction when 'sufficient grounds' exist.").

Brown willfully failed to comply with previous State Court orders, and her Response expressly seeks enforcement of these obligations. [Countercls. ¶ 4; Resp. p. 7.] Considering this, the Court interprets Ms. Brown's Counterclaims as seeking enforcement of the State Court Divorce Decree and contempt orders.

The Court recognizes that existing case law supports the proposition that enforcement of a state court decree, in certain circumstances, falls outside the domestic relations exception. Most of these cases, however, specifically contemplate enforcement through criminal actions.[9] For example, in *United States v. Williams*, the Eleventh Circuit found that the domestic relations exception did not apply where a federal court convicted a defendant of failing to pay child support in violation of the Child Support Recovery Act ("CSRA"). 121 F.3d 615, 618 (11th Cir. 1997). Notably, the court found that the exception does not apply in actions under the CSRA because it does not require a federal court to "issue, modify, or otherwise consider divorce, alimony and child custody or support decrees." *Id.* at 620. The driving factor, however, was that the CSRA was a valid exercise of Congress's authority, and the domestic relations exception does not apply when Congress has legislated within its authority. *Id.* Additionally, many cases find the exception inapplicable when the true character of the claims sounds in tort or breach of contract.[10] Other courts narrowly interpret

---

[9] *See, e.g.*, *United States. v. Williams*, 121 F.3d 615 (11th Cir. 1997); *United States v. Kegal*, 916 F. Supp. 1233, 1235 (M.D. Fla. 1996) ("[T]he imposition of criminal penalties for failure to pay child support is analogous to enforcement actions over which the federal courts have long accepted jurisdiction.").

[10] *See, e.g.*, *Stone v. Wall*, 135 F.3d 1438, 1441 (11th Cir. 1998) ("We conclude that this case is just a tort suit for money damages. The suit does not fit our domestic-relations-exception precedents."); *Lannan v. Maul*, 979 F.2d 627, 631 (8th Cir. 1992) (holding that the domestic relations exception does

13

the exception and expressly find that enforcement of a divorce decree does not fall within the exception because *Ankenbrandt* specifically contemplated application of the exception only in cases requesting "*issuance* of a divorce, alimony, or child custody decree." *Ankenbrandt*, 504 U.S. at 704 (emphasis added).[11] [12] Ms. Brown urges the Court to adopt this narrow construction of the domestic relations exception without citing any of the above cases.[13]

---

not apply to an action for breach of contract); *Greiner v. De. Capri*, 403 F. Supp. 3d 1207, 1220–21 (N.D. Fla. 2019).

[11] *See, e.g.*, *Giles v. Krumhorn*, No. 06C2517, 2006 WL 2224063, at *3 (N.D. Ill. Aug. 2, 2006) (finding that "[p]laintiff's claim for enforcement of a state court child support and maintenance decree along with her breach of contract claims do not fall within the domestic relations exception to federal jurisdiction," but abstaining because of the state's substantial interest in domestic relations disputes).

[12] Despite the above cases, several other courts recognize the narrow intent of the exception but find enforcement of state court decrees to fall within the exception. For example, the Sixth Circuit has routinely held that the determinative question is whether "the plaintiff seek[s] an issuance or modification or enforcement of a divorce, alimony, or child-custody decree." *Chevalier v. Estate of Barnhart*, 803 F.3d 789, 797–98 (6th Cir. 2015) (finding claims fell outside of exception because "none of the claims or remedies requires a federal court to . . . monitor [] need for maintenance and support, or enforce [] compliance with a related court order."). The Seventh and Second Circuits employ a "core and a penumbra" test. *Friedlander v. Friedlander*, 149 F.3d 739, 740 (7th Cir. 1998); *see also Martinez v. Queens Cnty. Dist. Atty.*, 596 F. App'x. 10, 12 (2d Cir. 2015) (unpublished) (holding that a court may lack subject matter jurisdiction "in actions directed at challenging the results of domestic relations proceedings," even if a party is not seeking an issuance of a decree). The core consists of cases where a plaintiff seeks "the granting of a divorce or an annulment, an award of child custody, [or] a decree of alimony or child support." *Friedlander*, 149 F.3d at 749. The penumbra "consists of ancillary proceedings, such as a suit for the collection of unpaid alimony, that state law would require be litigated as a tail to the original domestic relations proceeding." *Id.* Courts within the Seventh Circuit have since included enforcement actions for domestic-relations judgments within the exception. *See Schnakenburg v. Krilich*, 573 F. Supp. 3d 1312, 1319 (N.D. Ill. 2021). Lastly, the Tenth Circuit in *Wyttenbach v. Parrish* held that a federal court cannot "issue and enforce 'divorce, alimony and child custody decrees' . . . ." 496 F. App'x. 796, 797 (10th Cir. 2012) (unpublished) (quoting *Ankenbrandt*, 504 U.S. at 703). The circuit court further found that a party cannot commence an action in federal court seeking the court's evaluation as to a party's compliance. *Id.* ("[T]here's no question that [plaintiff] would like a federal court to evaluate [defendant's] obligations under child custody arrangements negotiated in and supervised by a state court, hold that [defendant] failed to comply with her obligations, and tell her to refund the money [plaintiff] paid under their agreement.").

[13] The one case Ms. Brown cites is *Levin v. Carlton (In re Carlton)*, No. 15-01099, 2017 WL 192954 (B.A.P. 10th Cir. Jan. 18, 2017). In that case the Bankruptcy Appellate Panel defines the domestic relations exception in passing buried within a footnote. *Id.* at *6 n.54. They did not otherwise discuss the exception because the bankruptcy court did not address it.

The Eleventh Circuit has outlined four factors courts should look to in deciding whether to apply the domestic relations exception: "(1) strong state interest in domestic relations; (2) competency of state courts in settling family disputes; (3) the possibility of incompatible federal and state decrees in cases of continuing judicial supervision by the state; and (4) the problem of congested federal court dockets." *Stone v. Wall*, 135 F.3d 1438, 1441 (11th Cir. 1998); *see also Ingram v. Hayes*, 866 F.2d 368, 370 (11th Cir. 1988); *Harnett v. Estate of Chislett*, 487 F. Supp. 3d 1270, 1275 (S.D. Ala. 2020). The main question is whether the litigation requires the court to examine the "marital or parent-child relationship." *Stone*, 135 F.3d at 1441. "As a result, federal courts generally dismiss cases involving divorce and alimony, child custody, visitation rights, establishment of paternity, child support, and enforcement of separation or divorce decrees still subject to state court modification." *Moussignac v. Ga. Dep't of Human Res.*, 139 F. App'x 161, 162 (11th Cir. 2005) (unpublished) (quoting *Ingram*, 866 F.2d at 369) (affirming district court's dismissal for lack of jurisdiction over action to recover child support); *see also Fla. Dep't of Rev. v. Lockley*, No. 3:21-cv-762, 2021 WL 8200194, at *4 (M.D. Fla. Nov. 23, 2021) (holding court lacked subject matter jurisdiction when party sought to remove state court action for dissolution of marriage and child support enforcement), *report and recommendation adopted*, No. 3:21-cv-762, 2021 WL 8200189 (M.D. Fla. Dec. 9, 2021).

Here, the State Court continues to oversee the dissolution of the marital relationship between the parties and review contempt actions in connection with its Divorce Decree. No party is arguing that the State Court cannot enforce the

15

Counterclaims and potential arrearage. Considering the history of the State Court's issuance of the Divorce Decree following a lengthy divorce proceeding and several hearings, and the two prior contempt orders against Mr. Brown, the State Court is the most competent court to resolve any issues raised in the Counterclaims. To do otherwise would raise the substantial possibility of inconsistent rulings between this Court and the State Court and interfere with the substantial state interest in resolving domestic affairs.

The Eleventh Circuit's decision in *Ingram v. Hayes* supports this conclusion. There, the Eleventh Circuit found that enforcing an arrearage claim when the federal court cannot merely refer to a state court record to calculate the arrearage falls within the exception. *See Ingram*, 866 F.2d at 370. The court held that the district court properly dismissed a claim for child support arrearages because the district court could not merely enforce a state court decree by ordering payment of arrears since the state court purged all arrears in a subsequent order. *Id.* The court reasoned that this would require the district court to decide the propriety of the subsequent purge order, forcing the court to involve itself in the parties' domestic affairs. *Id.* The same analysis applies here. The State Court denied Ms. Brown's Third Contempt Petition in which she argued Mr. Brown still owes substantial sums of money. While the State Court provided no explanation for denying the Third Contempt Petition except that Ms. Brown failed to put forward sufficient evidence, determining the exact arrears owed would require the Court to consider the propriety of the State Court order, further involving the Court in the parties' domestic affairs and potential factual

16

disputes around payments and non-payments. *See Vargas v. Austin,* No. 25-CIV-14327, 2025 WL 3466313, at *3 (S.D. Fla. Oct. 7, 2025) (applying domestic relations exception to claim involving child support payments because it would enmesh court in dispute about enforcement), *report and recommendation adopted,* No., 25-14327, 2015 WL 3165239 (S.D. Fla. 2025); *Guevara v. Padin,* No. 16-cv-23726, 2016 WL 7188783, at *3 (S.D. Fla. Nov. 9, 2016) ("This Court will not enmesh itself in a dispute involving enforcement of a judgment for child support or allegedly miscalculated child support payments.").[14] Ultimately, Ms. Brown wants this Court to review the obligations imposed on Mr. Brown through the State Court divorce proceedings and enforce those obligations despite an already valid Divorce Decree and two prior contempt orders. The Counterclaims are not tort or contract claims, nor do they indirectly relate to a domestic relations case. Instead, they directly relate and, with limited exceptions, were already raised in the Third Contempt Petition. The domestic relationships exception does not apply in all cases involving intra-family disputes, but the particular facts here and the continuing involvement of the State Court in enforcement and contempt proceedings warrants application of the exception. Accordingly, the Court is satisfied that Ms. Brown's Counterclaims fall within the domestic relations exception, divesting this Court of jurisdiction.

---

[14] The Third Contempt Petition specifies several issues regarding payments, or non-payment, by Mr. Brown. For example, it asserts that Mr. Brown signed a check for $4,663 that was to be distributed to Ms. Brown as partial reimbursement of attorney's fees for Clark-Lowery & Lumpkin and the tax attorney fees. [Mot., p. 32.] However, her attorney at the time, Blooms Lines Alexander, allegedly deposited the check and applied it to their outstanding balance for unpaid legal fees. [*Id.*] The Court cannot decipher what arrears are still outstanding and what the State Court considers satisfied without delving into these factual disputes.

17

C. **Abstention**

Even if the domestic relations exception was inapplicable and the Court otherwise has subject matter jurisdiction, abstention would be appropriate here. "While the narrow domestic relation exception under *Ankenbrandt* is jurisdictional . . . 'courts generally use abstention in the context of a dispute relating to domestic relations when the controversy does not fall within the exact purview of divorce, alimony or child custody, but instead is closely related.'" *Burden v. Serafin*, No. 22-cv-03479, 2023 WL 4002727, at *4 n.5 (N.D. Cal. May 22, 2023) (quoting *Kahn v. Kahn*, 21 F.3d 859, 860 n.1 (8th Cir. 1994)); *see also Alliant Tax Credit 31, Inc. v. Murphy*, 924 F.3d 1134, 1146 (11th Cir. 2019) (explaining that even if subject matter jurisdiction is proper, courts abstain when sufficient grounds exist). A federal court faced with issues "on the verge" of matrimonial "should abstain from exercising jurisdiction so long as there is no obstacle to their full and fair determination in state courts." *Am. Airlines, Inc v. Block*, 905 F.2d 12, 14 (2d Cir. 1990); *see also Zappin v. Comfort*, No. 23-7363, 2024 WL 5001624, at * 2 (2d Cir. Dec. 6, 2024). Moreover, abstention is not confined to diversity jurisdiction as many courts pose the domestic relations exception is, nor is it confined to the same narrow issues. *See Evans v. Adams*, 714 F. Supp. 3d 119, 124 n.6 (E.D.N.Y. 2024).

Mr. Brown cites to *Carver v. Carver,* 954 F.2d 1573 (11th Cir. 1992), in which the Eleventh Circuit emphasized that "[i]t is appropriate for bankruptcy courts to avoid incursions into family law matters 'out of consideration of court economy, judicial restraint, and deference to our state court brethren and their established

18

expertise in such matters.'" *Id.* at 1579 (quoting *MacDonald v. MacDonald (In re MacDonald)*, 755 F.2d 715, 717 (9th Cir. 1985)). Courts should abstain from hearing matters involving alimony or child support which is under "continuing supervision by the state courts, [and] could require the bankruptcy court to second guess the state court on such matters . . . ." *Id.*[15]

Mr. Brown also cites to *In re McClendon*, No. 12-41200, 2012 WL 4758363 (Bankr. S.D. Ga. Sept. 14, 2012). In *McClendon,* the bankruptcy court abstained from disturbing a state court's judgment setting a payment schedule for debtor to pay arrears to his ex-wife. The court noted that while a court should not abstain in all cases, "in situations where a [party] has been in arrears several times in the past, the case for abstention from domestic support matters is stronger." *Id.* at *1. Although the facts in *McClendon* and *Carver* involve a debtor who was trying to avoid or delay domestic support obligations, which may or may not be the case here, the underlying policy reasons are the same. To hear the Counterclaims would require this Court to disturb the State Court's contempt denial and enmesh itself into factual disputes between the parties on issues previously litigated in the State Court. The Counterclaims are closely related to matrimonial issues and should be determined in the State Court. As a result, even if the Court otherwise has subject matter jurisdiction over the Counterclaims, the Court elects to abstain from hearing them pursuant to 28 U.S.C. § 1334(c).

---

[15] *Carver* remains good law in the Eleventh Circuit despite it being called into question by subsequent case law. *See, e.g.*, *Rogers v. Overstreet (In re Rogers)*, 164 B.R. 382, 385-86 (Bankr. N.D. Ga. 1994) (finding *Carver* remained good law after Supreme Court decision in *Ankenbrandt* called it into question).

19

**IV. CONCLUSION**

For the foregoing reasons, IT IS ORDERED that the Motion to Dismiss is GRANTED. Ms. Brown's Counterclaims are DISMISSED.

The Clerk is directed to serve a copy of this order on all counsel of record in this Adversary Proceeding.

END OF DOCUMENT